**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-03037-01-CR-S-MDH** |
| | ) | |
| **JOSHUA L. BIPPERT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Before the Court is Defendant's Motion to Dismiss (Doc. 29). Defendant moves to dismiss the indictment with prejudice, arguing that "it seeks to impose criminal penalties for otherwise constitutionally protected speech in that [his] 'communications' of September 20 and 21, 2020, do not, as a matter of law, fall within the narrow 'true threats' exception of protected speech and therefore fails to state an offense." *Id*. at 6. The Magistrate Judge prepared a report and recommendation on the Motion (Doc. 33) and recommended it be denied. For the reasons set forth herein, the report and recommendation is adopted and the Motion to Dismiss (Doc. 29) is **DENIED**.

## BACKGROUND

Defendant has been charged by Indictment with violating 18 U.S.C. § 875(c), which states "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." The Indictment alleges:

> On or between September 20, 2020, and September 21, 2020, said dates being approximate, in Taney County, in the Western District of Missouri, and elsewhere, the defendant, **JOSHUA L. BIPPERT**, transmitted in interstate and foreign commerce a communication, through the use of the Internet, to the Los Angeles

1

County, California Sheriff's Department, and the communication contained a threat to injure employees of the Los Angeles County, California Sheriff's Department, knowing that the communication would be understood as a true threat, in violation of Title 18, United States Code, Section 875(c).

(Doc. 1).

As set forth by Defendant, on September 12, 2020, two deputies with the Los Angeles County, California Sheriff's Department (LASD) were ambushed by a gunman as they were sitting in their patrol car. (Doc. 29 at 3). The LASD Lomita Station maintains an Instagram account, publicly open for viewing and commentary, on which LASD employees post information regarding investigations, arrests, and other items of public interest. *Id*. On September 18, 2020, an employee of the LASD Lomita Station posted on its Instagram account information related to the arrest of an individual for a firearm offense and the seizure of a firearm. *Id*. at 4.

Defendant maintains an Instagram account under the username @sledgehammertophat, on which he posts, follows, and comments on social and political issues, particularly those related to Second Amendment rights. *Id*. at 2. On September 20, 2020, Defendant sent a direct message through his Instagram account to the LASD Lomita Station Instagram account (the "First Communication"), which stated:

> Recently a couple of your officers arrested a man for owning a firearm. If you want more of your officers to end up like the two that got shot while sitting in their patrol car then go ahead and keep the charges. Release the man who did nothing wrong but keep his second amendment rights or there will be blood. This is a threat.

*Id*.

On the same date, Defendant made a post on his Instagram account and "tagged" the LASD Lomita Station Instagram account (the "Second Communication"), which read:

> Forget the constitution. We need to end gun control by any means necessary. Yes I do mean violence. @lasdlomita If you think cops are your friends you are on the wrong side. Give them a call or pay them a visit (310) 539- 1661, 26123 Narbonne Avenue, Lomita, CA 90717…. #taxationistheft #commonsense #democrat #republican #libertarian #thinblueline #anarchy #duncanlemp #danielshaver #breonnataylor #georgefloyd #ryanwhitaker #acab.

2

*Id.*

On September 21, 2020, Defendant commented to a post on the LASD Lomita Station Instagram account (the "Third Communication"), writing "for me, the most irritating part is living in the Midwest and not on the border to California where I could take a nice short drive to water the tree of liberty." *Id.*

On March 3, 2021, a federal agent and a local deputy spoke with Defendant at his residence near Branson, Missouri. At that time, Defendant stated he had never been to California, had no plan to go to California and had written the communications at issue from his residence. Regarding the communications, he acknowledged that he could understand how someone at the LASD may have felt "scared" or how it may "tickle the hairs on the back of your neck." *Id.* at 5.

## DISCUSSION

Defendant argues that his communications are "legally protected speech and expression under the First Amendment [] requiring a dismissal of the Indictment." *Id.* at 2. Ordinarily, "an indictment that tracks the statutory language is sufficient." *United States v. Whitlow*, 815 F.3d 430, 433 (8th Cir. 2016). However, because Section 875(c) criminalizes "communications," whether or not a communication is protected speech under the First Amendment is a question of law to be decided by the court. *United States v. Stevens*, 881 F.3d 1249, 1252 (10th Cir. 2018). Threat statutes such as Section 875(c) apply only to threats outside the First Amendment's protection, or "true threats." *United States v. Wheeler*, 776 F.3d 736, 742-43 (10th Cir. 2015). "True threats" are "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). "[I]f there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law." *Stevens*, 881 F.3d at 1252

(citing *Wheeler*, 776 F.3d at 742) (cleaned up). However, "absent an unusual set of facts, the question whether statements amount to true threats is a question generally best left to a jury." *Id*. If the court determines a "reasonable jury could find that the communications constitute true threats," then it may deny the defendant's motion to dismiss. *Id*. (citing *United States v. Stock*, 728 F.3d 287, 298 (3rd Cir. 2013)) (cleaned up).

Section 875(c) is a specific intent crime that requires proof that the defendant transmitted "a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *United States v. Dierks*, 978 F.3d 585, 591 (8th Cir. 2020) (citing *Elonis v. United States*, 575 U.S. 723, 740 (2015)). Additionally, a "true threat" requires an objective "finding that a reasonable person would have been threatened by the charged communication." *Id*. at 592. In making this determination, "the communication must be viewed in textual context and also in the context of the totality of the circumstances in which the communication was made." *United States v. Mabie*, 663 F.3d 322, 331 (8th Cir. 2011).

The First Communication, sent directly to the LASD, refers to the LASD's recent arrest of a man on firearm charges, then cites the ambush by a gunman of two LASD deputies as they sat in their patrol car only six days earlier. It then states that if the LASD keeps the charges and the arrested man isn't released, then more officers will "end up like the two that got shot," and "there will be blood." The First Communication concludes with the sentence, "This is a threat."

The Second Communication, posted by Defendant to his own account, includes the following: "Forget the constitution. We need to end gun control by any means necessary. Yes I do mean violence @lasdlomita."

In the Third Communication, Defendant expresses a desire to "take a nice short drive to water the tree of liberty." In the Motion, he explains this is a reference to a quote by Thomas

4

Jefferson from 1787 that reads "Let them take arms … The tree of liberty must be refreshed from time to time with the blood of patriots and tyrants." (Doc. 29 at 5, n.1.)

The Court finds that a reasonable jury could objectively find that a reasonable person would have been threatened by the communications. The First Communication is premised on a contingency, explicitly stating that if the LASD didn't release a man and drop the charges against him, then more LASD officers would be shot like two officers only six days prior and there will be blood. See *United States v. Bellrichard*, 994 F.2d 1318, 1322 (8th Cir. 1993) ("A threat may be considered a 'true threat' even if it is premised on a contingency"). Furthermore, the First Communication explicitly states that it "is a threat." This conclusion is bolstered by the Second Communication, which urges readers to use "violence" towards the LASD to end gun control. Likewise, the Third Communication implicitly refers to spilling blood in California.

As for the subjective element, when asked about the communications by law enforcement officers, Defendant stated that he could understand how someone at the LASD may have felt "scared" or how it may "tickle the hairs on the back of your neck." *Id.* at 5. A jury "can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." *Rosemund v. United States*, 572 U.S. 65, 78 n.9 (2014). Defendant's claim that he "he had never been to California [and] had no plan to go to California" is of no consequence. See *United States v. Ivers*, 967 F.3d 709, 720 (8th Cir. 2020) ("even if [the defendant] never had any intention of acting on the threat, that fact is irrelevant."). Therefore, based on the content of the communications, including the explicit statement in the First Communication that, "This is a threat," along with Defendant's statement to law enforcement officers as to how the communications may have been perceived, a reasonable jury could infer that Defendant knew the communications would be viewed as a threat. Consequently, a reasonable jury could find both the

objective and subjective elements necessary to prove that the communications constitute true threats.

Defendant argues that his three communications were "political hyperbole" and not a true threat. *Id*. at 15. Defendant is correct that "political hyperbole" should be distinguished from true threats. *Dierks*, 978 F.3d at 589 (citing *Watts v. United States*, 394 U.S. 705, 708 (1969)). However, "political context alone will not excuse a threat." *Id*. (citing *Bellrichard*, 994 F.2d at 1322). Furthermore, "threatening communications that do not in any sense contribute to the values of persuasion, dialogue, and the free exchange of ideas are true threats and fall outside of the First Amendment's protection." *Id*.

Here, the communications taken together, particularly the First Communication, are more than "vehement, caustic, and [] unpleasantly sharp attacks on government and public officials" which must be tolerated under the First Amendment. *Id*. Rather, as discussed above, the First Communication refers to a recent attack on LASD deputies, then states that more deputies will be shot and "there will be blood" unless a man is released and explicitly states it "is a threat." The Court is unclear how this communication "contribute[s] to the values of persuasion, dialogue, and the free exchange of ideas" in any way. Also, Defendant's political beliefs and the reference to "second amendment rights" in the First Communication do not preclude the communication from being a true threat. To find differently would essentially require that any threat that is politically motivated, no matter how serious, is protected speech under the First Amendment. Accordingly, the Court concludes that as a matter of law, a reasonable jury could find that Defendant's communications are more than political hyperbole and constitute true threats.

Based on the foregoing, and considering the conclusions of the Magistrate Judge, the Court finds as a matter of law that a reasonable jury could find that Defendant's communications that

form the basis of the indictment constitute true threats. This conclusion does not preclude the submission of admissible evidence as to the "textual context and also [] the context of the totality of the circumstances in which the communication was made" to assist the jury in making their determination at trial. Therefore, the report and recommendation (Doc. 33) is adopted and Defendant's Motion to Dismiss (Doc. 29) is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 3, 2022                                    _/s/ Douglas Harpool_____
                                                                      **DOUGLAS HARPOOL**
                                                                      **United States District Judge**